IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIAMEDICA THERAPEUTICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PRA HEALTH SCIENCES, INC. and | ) C.A. No. 18-1318 (MN) |
| PHARMACEUTICAL RESEARCH | ) |
| ASSOCIATES GROUP B.V., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Neal C. Belgam, Kathleen M. Miller, SMITH KATZENSTEIN JENKINS, LLP, Wilmington, Delaware. Counsel for Plaintiff.

Arthur G. Connolly, III, CONNOLLY GALLAGHER LLP, Wilmington, Delaware. Counsel for Defendant Pharmaceutical Research Associates Group B.V.

Stephen B. Brauerman, Elizabeth A. Powers, BAYARD, P.A., Wilmington, Delaware. Counsel for Defendant PRA Health Sciences, Inc.

James P. Flynn, EPSTEIN, BECKER & GREEN, P.C., Newark, New Jersey. Counsel for Defendants.

September 21, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff DiaMedica Therapeutics, Inc. ("DiaMedica") has sued Defendants PRA Health Sciences, Inc. ("PRA USA") and Pharmaceutical Research Associates Group B.V. ("PRA Netherlands") (collectively "PRA"), alleging seven counts in contract and tort arising from a clinical trial management services agreement. After initiating this suit in the District of Delaware, DiaMedica filed a Motion to Transfer Venue, pursuant to 28 U.S.C. § 1404(a), seeking transfer to the District of Minnesota. (D.I. 25). For the reasons set forth below, DiaMedica's Motion to Transfer Venue is DENIED.

I.      BACKGROUND

   A.      Factual Background

DiaMedica is a Canadian corporation with a principal place of business in Minnesota. (D.I. 1 ¶ 1). DiaMedica is developing DM199, a synthetic human protein to be used to treat chronic kidney disease and acute ischemic stroke. (*Id.* ¶ 8). PRA USA is a Delaware corporation with its principal place of business in North Carolina. (*Id.* ¶ 2). It is a global contract research organization for clients in the biotechnology and pharmaceutical industries. (*Id.* ¶ 12). PRA USA is the parent of PRA Netherlands, (*id.* ¶ 17), a corporation organized under the laws of the Netherlands with its principal place of business in the Netherlands, (*id.* ¶ 3).

In November 2011, PRA USA began soliciting DiaMedica to hire PRA USA to perform clinical trials. (*Id.* ¶ 18). On June 8, 2012, DiaMedica representatives met with Andre van Vliet, PRA USA's Vice President of Medical Affairs, at the American Diabetes Conference in Philadelphia. (*Id.* ¶ 22). During the meeting, van Vliet told DiaMedica's representatives about PRA's successful clinical trials in the Netherlands and represented that PRA's study design "work[ed] like clockwork." (*Id.* ¶ 23).

DiaMedica and PRA USA's negotiations continued. (*Id.* ¶¶ 37–39). On January 18, 2013, DiaMedica "signed a Letter of Intent for Clinical Trial and Laboratory Services . . . , which authorized PRA to begin work on the clinical trial" for DM199. (*Id.* ¶ 41). After further negotiation, on March 18, 2013, DiaMedica and PRA Netherlands entered an Agreement for Clinical Trials Management Services ("the Agreement"), allowing PRA Netherlands to manage a clinical trial for DM199. (*Id.* ¶¶ 44–45).

The DM199 research trials began in April 2013. (*Id.* ¶ 48). In February and March 2014, van Vliet reported positive preliminary results, upon which DiaMedica based business decisions. (*Id.* ¶¶ 50, 51, 56). On November 14, 2014, PRA sent DiaMedica preliminary results for the DM199 study, which contradicted the positive results that van Vliet had reported to DiaMedica. (*Id.* ¶¶ 57–60). After DiaMedica issued a press release summarizing the preliminary results, DiaMedica's stock price fell precipitously. (*Id.* ¶ 61). In late 2016, PRA released a draft Clinical Study Report for its trial of DM199. (*Id.* ¶ 66). The Report revealed that PRA Netherlands had violated study protocols set forth in the Agreement. (*Id.* ¶¶ 67–75).

### B.    Procedural History

On November 14, 2017, DiaMedica sued PRA Netherlands in the Southern District of New York, alleging breach of the Agreement. *DiaMedica Therapeutics Inc. v. Pharm. Research Assocs., Grp. B.V.*, Civil Action No. 17-cv-08875 (WHP) (S.D.N.Y. filed Nov. 14, 2017). PRA Netherlands moved to dismiss for lack of personal jurisdiction, and, thereafter, DiaMedica voluntarily dismissed its claims.

On August 24, 2018, DiaMedica filed its Complaint against PRA USA and PRA Netherlands in this Court, alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), fraud (Count III), negligent misrepresentation (Count IV), and equitable/promissory estoppel (Count V). (D.I. 1 ¶¶ 83–134). DiaMedica seeks to hold PRA

USA liable for the actions of PRA Netherlands through an action to pierce the corporate veil (Count VI) and a theory of alter ego liability (Count VII). (*Id.* ¶¶ 135–52). PRA USA filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that DiaMedica failed to state a claim for relief and that its claims are time-barred by Delaware's three-year statute of limitations. (D.I. 15). PRA Netherlands filed a Motion to Dismiss, arguing *forum non conveniens* and lack of personal jurisdiction over PRA Netherlands pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (D.I. 12).

DiaMedica filed its Motion to Transfer Venue, seeking transfer to the District of Minnesota. (D.I. 25). The Court stayed briefing on Defendants' motions to dismiss. (D.I. 29). After the parties fully briefed the Motion to Transfer Venue, the Court granted DiaMedica leave to conduct limited discovery on the issue of whether the District of Minnesota could exercise personal jurisdiction over Defendants. (D.I. 50). Thereafter, they submitted supplemental papers on the issue of personal jurisdiction over PRA Netherlands in Minnesota. (D.I. 72–76, 79, 82).

## II. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Nothing in this statute bars a plaintiff from moving to transfer venue, despite having initially chosen to litigate in the original forum. *James v. Daley & Lewis*, 406 F. Supp. 645, 648 (D. Del. 1976). Courts in this district, however, have found that a plaintiff who takes this course of action must first show a change in circumstances since filing suit in the original forum. *Id.*

To decide a motion to transfer, the court undertakes a two-step analysis, with the moving party bearing the burden at each step. *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d

3

718, 724 (D. Del. 2012); *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, Civil Action No. 12–462 GMS, 2012 WL 3777423, at *4 (D. Del. Aug. 30, 2012). First, the court determines whether the plaintiff could have brought the action originally in the transferee forum. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 3d 192, 196 (D. Del. 1998). "If the Court answers this question in the negative, then its inquiry ends." *Id.* Second, the court decides whether transfer would best serve the interests of justice and convenience. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

### III.  DISCUSSION

#### A.  DiaMedica Has Not Shown Changed Circumstances

As a threshold matter, DiaMedica has not claimed that its circumstances have changed since it filed its Complaint in the District of Delaware. DiaMedica instead argues that a plaintiff moving to transfer should not be required to show changed circumstances because such a requirement would undermine the "remedial purpose" of the transfer statute. D.I. 46 at 8 (citing *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964)). The Court recognizes that there is a split in authority as to whether a plaintiff must show changed circumstances. *Compare James*, 406 F. Supp. at 648 ("[B]efore a court will grant a plaintiff's motion for a change of venue, he must first show a change in circumstances since the filing of his suit."), *and Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 501 (D.N.J. 1998) ("A plaintiff seeking to transfer the venue of an action pursuant to § 1404 typically must demonstrate a change in circumstance that has occurred since the filing of the action which warrants a change of venue."), *with Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 769 F. Supp. 208, 209 (E.D. La. 1991) ("This court disagrees with the defendant that the plaintiff must show a change in circumstances."), *and Cordis Corp. v. Siemens–Pacesetter, Inc.*, 682 F. Supp. 1200, 1203 (S.D. Fla. 1987) ("[W]e hold that there is no requirement under 28 U.S.C. § 1404 that a plaintiff seeking transfer of venue must

4

show a change of circumstances since the time [of] the original action."). Thus, in the interest of thoroughness, the Court also undertakes the two-step analysis for deciding a motion to transfer.

### B. DiaMedica Has Not Satisfied the Two-Step Transfer Analysis

#### 1. DiaMedica Has Not Established Personal Jurisdiction in District of Minnesota

A federal court sitting in diversity "may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and the Due Process Clause" of the U.S. Constitution. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991). Under the Minnesota long-arm statute, the personal jurisdiction analysis collapses into a single step of deciding whether the exercise of personal jurisdiction over a defendant comports with due process. *See PSINet Consulting Sols. Knowledge Servs., Inc. v. Saudi Petro Gas Co.*, No. CIV.01320RHKJMM, 2001 WL 869616, at * 5 (D. Minn. Aug. 1, 2001); Minn. Stat. § 543.19.

For a court to exercise personal jurisdiction over an out-of-state defendant, the defendant must have sufficient "minimum contacts" such that it "should reasonably anticipate being haled into court" in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Courts of the Eighth Circuit consider five factors to assess the prudence of exercising personal jurisdiction over a non-resident defendant: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996).[1]

---

[1] The Court applies the Minnesota long-arm statute, as interpreted under Eighth Circuit law, to decide whether DiaMedica could have originally brought its cause of action in the District of Minnesota. *See, e.g.*, *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24–25 (3d Cir. 1970) (applying Missouri's long-arm statute under Eighth Circuit law to determine whether

5

Here, DiaMedica fails to show that it could have brought this action in the District of Minnesota because there remains a "real question" whether Minnesota courts could exercise jurisdiction over both PRA USA and PRA Netherlands. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970) ("If there is a real question whether a plaintiff could have commenced the action originally in the transferee forum, it is evident that he would not have an unqualified right to bring his cause in the transferee forum.") (internal citation and quotation marks omitted). In its motion to transfer, DiaMedica did not address personal jurisdiction and instead started at the second step of the transfer analysis to show that transfer would serve the interests of justice and convenience. (D.I. 26 at 10–15). In response to Defendants' argument that DiaMedica failed to address personal jurisdiction of the Minnesota courts, DiaMedica states that Defendants signed contracts, initiated telephonic and email communication, and sent representatives to meet with DiaMedica, all in Minnesota and all with the goal of soliciting DiaMedica's business. (D.I. 46 at 3). DiaMedica also claims that PRA employs and has hired several individuals in Minnesota. (*Id.*).

These factual allegations ignore that Defendants are two separate entities, and Defendants' alleged contacts with Minnesota appear attributable only to one entity. The Eighth Circuit allows a subsidiary's contacts with the forum state to establish personal jurisdiction over a parent entity "if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the [subsidiary] to act as the [parent's] alter ego." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). DiaMedica, however, has shown no legal authority that this principle works in the reverse such that the contacts of a parent can establish personal jurisdiction over a subsidiary. PRA USA is the parent entity with whom

---

plaintiff in Western District of Pennsylvania could have initiated action in Western District of Missouri).

DiaMedica representatives negotiated the Agreement for Clinical Trials Management Services. (D.I. 1 ¶ 39). Meanwhile, PRA Netherlands is a subsidiary of PRA USA and carried out the clinical trial of DM199 in the Netherlands pursuant to the Agreement. (D.I. 28, Ex. H at 3). Even if PRA USA's contacts with Minnesota sufficed to establish personal jurisdiction over PRA USA, DiaMedica has not shown that Minnesota courts may exercise personal jurisdiction over PRA Netherlands. *See Digi-Tel Holdings, Inc.*, 89 F.3d at 524 (affirming dismissal for lack of personal jurisdiction over subsidiary defendant because plaintiff "fail[ed] to produce evidence sufficient to support the inference that [the parent entity]'s activities were directed by or primarily for the benefit of [the subsidiary]").

Following jurisdictional discovery, DiaMedica supplemented its allegations to add that PRA Netherlands employees communicated and met with DiaMedica representatives in Minnesota on a few occasions. (D.I. 72 at 4–5). These contacts, however, are not of sufficient quantity, quality, or relation to the cause of action to conclusively establish that the District of Minnesota may exercise specific personal jurisdiction over PRA Netherlands. *See Digi-Tel Holdings, Inc.*, 89 F.3d at 523. DiaMedica's argument for personal jurisdiction still relies heavily on PRA USA's contacts with Minnesota, but DiaMedica fails to adduce legal authority for imputing these contacts to PRA Netherlands. (*Id.* at 2–4).

Because genuine doubt remains whether DiaMedica could have initiated this suit in the District of Minnesota, the Court will deny the motion to transfer.

### 2.  The Court Need Not Apply the *Jumara* Factors

Having determined that DiaMedica could not have brought this action against Defendants in the District of Minnesota, the Court need not proceed to the second step of the analysis to decide whether transfer would serve the interests of justice and convenience.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Transfer Venue is denied. An appropriate order will follow.